903 So.2d 367 (2005)
Ismail CIRA and Lirije Cira, individually and as parents and natural guardians of Sami Cira, Bekim Cira, and Kujtime Cira, minors; Naim Cira; and Mirije Cira, Appellants,
v.
Bob DILLINGER, in his official capacity as Public Defender of the Sixth Judicial Circuit of Florida, Appellee.
No. 2D04-4285.
District Court of Appeal of Florida, Second District.
June 15, 2005.
*368 Timothy W. Weber of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg, for Appellants.
Scot E. Samis and John D. Kiernan of Abbey, Adams, Byelick, Kiernan, Mueller & Lancaster, L.L.P., St. Petersburg, for Appellee.
WALLACE, Judge.
The appellants, Ismail Cira and his family, filed an action in the circuit court against the appellee, Bob Dillinger, in his official capacity as Public Defender of the Sixth Judicial Circuit, for legal malpractice allegedly committed in the defense of Mr. Cira on two aggravated battery charges. The circuit court entered a summary judgment in favor of the Public Defender because the underlying criminal case had not terminated in Mr. Cira's favor. We affirm the summary judgment for the Public Defender but write to explain our decision.

*369 THE FACTS AND PROCEDURAL HISTORY
Mr. Cira was charged in the Pinellas Circuit Court with two counts of aggravated battery. The Public Defender was appointed to represent Mr. Cira on the charges. After a jury trial, Mr. Cira was convicted on both counts and sentenced to a term of ninety-two months in state prison. This court affirmed the judgments and sentences on direct appeal. Cira v. State, 728 So.2d 215 (Fla. 2d DCA 1998) (table decision).
After Mr. Cira's convictions and sentences were upheld on direct appeal, he filed a motion for postconviction relief in the circuit court alleging several grounds, including ineffective assistance of trial counsel. The circuit court summarily denied Mr. Cira's motion, but this court reversed the circuit court's order relative to the ineffective assistance claim and remanded the case to the circuit court for further proceedings. Cira v. State, 780 So.2d 175 (Fla. 2d DCA 2001).[1]
On remand, the circuit court entered an order finding that Mr. Cira received ineffective assistance of counsel at his trial and that he was prejudiced as a result. Consequently, the circuit court vacated the judgments and sentences previously imposed on Mr. Cira. The circuit court's order for postconviction relief provided that Mr. Cira would be released on $5000 bail "pending further proceedings." Mr. Cira's release was subject to the special condition that he have no contact with one of the alleged victims of the incident that led to the aggravated battery charges.
Several months after the entry of the order for postconviction relief, Mr. Cira entered negotiated pleas of nolo contendere to the pending aggravated battery charges. The circuit court accepted the pleas and withheld adjudication of guilt. In accordance with the negotiated pleas, the circuit court entered an order of probation that placed Mr. Cira on probation for two concurrent terms of one year on each count but terminated the probation simultaneously with the entry of the order. The order provided further that Mr. Cira was required to serve seventy days in the Pinellas County jail as a special condition of his probation. With credit for time already served in jail, Mr. Cira had satisfied this condition at the time of sentencing, and he was not required to serve any additional time in jail. Finally, Mr. Cira was required to give a DNA sample and pay $20 for the cost of drawing and transmitting the sample to the Florida Department of Law Enforcement.
The criminal case against Mr. Cira terminated with the entry of the order of probation. Mr. Cira subsequently filed an action for legal malpractice against the Public Defender. Mr. Cira alleged in his complaint that he had been incarcerated for forty-four months and required to incur substantial expenses for attorney's fees as a result of the negligence of the assistant public defender assigned to his case. Mr. Cira alleged further that his convictions and sentences had been set aside by the circuit court's order and that he was actually innocent of the charges. Mr. Cira's wife and children asserted claims against the Public Defender for loss *370 of spousal consortium and parental consortium.
The Public Defender moved for summary judgment on the ground that the appellants were not entitled to prevail on their legal malpractice claim as a matter of law because Mr. Cira "was not exonerated of the charges in the underlying criminal case." The Public Defender attached copies of several documents to his motion, including (1) the circuit court's order granting Mr. Cira's motion for postconviction relief, (2) the change of plea form signed by Mr. Cira, (3) the transcript of the hearing on Mr. Cira's change of plea and sentencing, and (4) the order of probation. In support of his legal argument on the motion, the Public Defender cited the decisions in Schreiber v. Rowe, 814 So.2d 396 (Fla.2002), and Johnson v. Gibson, 837 So.2d 481 (Fla. 5th DCA 2002).
In its order granting the Public Defender's motion, the circuit court noted the Supreme Court of Florida's adoption of the majority rule "that a convicted criminal defendant must obtain appellate or postconviction relief as a precondition to maintaining a legal malpractice action." Steele v. Kehoe, 747 So.2d 931, 933 (Fla.1999). Because the undisputed facts showed that Mr. Cira pleaded nolo contendere to the two counts of aggravated battery and was sentenced as a felony offender based on his pleas, the circuit court ruled that Mr. Cira could not demonstrate that he had been "exonerated" in the underlying criminal case as required by Steele. Therefore, the appellants' claims for legal malpractice failed, and the Public Defender was entitled to summary judgment as a matter of law.

THE APPELLANTS' ARGUMENTS
On this appeal, the appellants raise two challenges to the summary judgment in favor of the Public Defender. First, they contend that the prerequisite to the legal malpractice action of exoneration in the underlying criminal case was satisfied by the entry of the order granting Mr. Cira postconviction relief. Second, they argue that the summary judgment should be reversed because it was based solely on evidence of Mr. Cira's pleas of nolo contendere to the charges and evidence concerning the pleas would have been inadmissible at trial under section 90.410, Florida Statutes (2004). We will examine each of the appellants' arguments below. Our review of the summary judgment entered in the circuit court is by the de novo standard. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).

DISCUSSION

A. The Exoneration Rule
Generally speaking, a claim for legal malpractice has three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence was the proximate cause of the client's loss. Steele, 747 So.2d at 933 (citing Weekley v. Knight, 116 Fla. 721, 156 So. 625 (1934)). However, the Supreme Court of Florida has adopted two additional elements applicable to a claim for legal malpractice in the defense of a criminal case. First, "a convicted criminal defendant must obtain appellate or postconviction relief as a precondition to maintaining a legal malpractice action." Id.; Johnson, 837 So.2d 481. This precondition is sometimes referred to as the "exoneration rule." See generally Canaan v. Bartee, 276 Kan. 116, 72 P.3d 911, 915-21 (2003) (discussing the exoneration rule at length and collecting cases); Robert J. Hoffman, Legal Malpractice in the Criminal Context: Is Postconviction Relief Required?, 74 Fla. B.J. 66 (Jan. 2000). Second, the plaintiff must prove his or her actual innocence of the crimes charged in *371 the underlying criminal proceeding by a preponderance of the evidence. Schreiber, 814 So.2d at 396; Johnson, 837 So.2d at 482. As Judge Posner aptly puts it, the legal malpractice plaintiff must prove "that he was in fact innocent, and not just lucky." Levine v. Kling, 123 F.3d 580, 583 (7th Cir.1997). We need not address this second, additional element further because the question of Mr. Cira's actual innocence was not a factor in the proceedings on the Public Defender's motion for summary judgment.
In this case, our task is to apply the exoneration rule to the undisputed facts established below. The appellants argue that in Steele, Schreiber, and Johnson, the courts used the term "exoneration" to refer to the grant of postconviction relief from a criminal conviction. They conclude that Mr. Cira satisfied the exoneration rule when the circuit court entered the order granting his motion for postconviction relief. We disagree. In the Steele, Schreiber, and Johnson cases, our supreme court and the Fifth District refer generally to obtaining postconviction relief in the underlying criminal case as being necessary to satisfy the exoneration rule. However, the courts did not have occasion in those cases to address the particular circumstances that would satisfy this precondition to filing a legal malpractice claim. In this case, we are called upon to examine this question.
We begin by noting that the relief available on the reversal of a conviction on direct appeal or on the entry of an order for postconviction relief is highly variable. A reversal of a conviction on appeal or a successful motion for postconviction relief may occasionally result in a dismissal of all pending charges. However, far more common results include the grant of a new trial or an order for resentencing. Following the grant of a new trial, the defendant may be acquitted or convicted again on the same or lesser charges after a second trial. In some instances, the prosecutor may decline to try the case again and nolle prosequi the charges. Or, as in this case, the defendant may plead nolo contendere or guilty to the same or lesser charges and be sentenced again. As a result, the consequences stemming from the reversal of a conviction on direct appeal or the entry of an order for postconviction relief are often indeterminate. Absent an order of dismissal, the pending criminal charges cannot be finally disposed of until further proceedings are held.
It follows that the reversal of a conviction on direct appeal or the entry of an order for postconviction relief does not necessarily result in the exoneration of a criminal defendant. To "exonerate" means "[t]o free from blame; to exculpate; also, to relieve from the blame or burden of; to relieve or set free from (blame, reproach)." V The Oxford English Dictionary 548 (2d ed. 1989). The reversal of a conviction on direct appeal or the entry of an order for postconviction relief may occasionally  but will not generally  exculpate or free a defendant in a criminal case from blame. Exoneration will most often not occur, if at all, until further proceedings are held. Because of the variety of outcomes that may follow reversal of a conviction on appeal or the entry of an order for postconviction relief, we conclude that proof of appellate or postconviction relief, without more, is insufficient to satisfy the exoneration requirement. The legal malpractice plaintiff must also establish the final disposition of the underlying criminal case in his or her favor. This conclusion is consistent with the policy arguments our supreme court noted when it adopted the exoneration rule, specifically the argument that "without obtaining relief from the conviction or sentence, the *372 criminal defendant's own actions must be presumed to be the proximate cause of the injury." Steele, 747 So.2d at 933. If a plaintiff can establish that the final disposition of the underlying case was in his or her favor, then the presumption that he or she was the proximate cause of the injury is overcome. A favorable final disposition of the underlying criminal case might be demonstrated in several ways, including, but not limited to, a dismissal of the charges, an acquittal after a new trial, or an order for a new trial followed by the entry of a nolle prosequi by the prosecutor. See Coscia v. McKenna & Cuneo, L.L.P., 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 676 (2001).
Turning to this case, we readily conclude that the appellants could not demonstrate that the underlying criminal case had been finally disposed of in Mr. Cira's favor. The order granting Mr. Cira's motion for postconviction relief did not result in a dismissal of the charges. On the contrary, Mr. Cira was released on $5000 bail "pending further proceedings." His release was subject to a "no contact" condition. Upon the acceptance of his pleas, Mr. Cira was placed on probation for one year concurrent on each of the aggravated battery charges. His probation was subject to the condition that he serve seventy days in jail. He was also required to give a DNA sample. Under these circumstances, Mr. Cira was not exculpated or freed from blame. Although Mr. Cira was not adjudicated guilty, he was sanctioned on account of the aggravated battery charges. Thus the circuit court correctly ruled that the appellants could not satisfy the exoneration requirement that was a precondition to the legal malpractice action against Mr. Cira's former defense counsel.

B. Section 90.410 and the Evidentiary Issue
In their second point, the appellants challenge the evidentiary support for the adverse summary judgment. The appellants' argument begins with the proposition that the sole evidentiary basis for the summary judgment was Mr. Cira's pleas of nolo contendere to the aggravated battery charges. The appellants assert that the nolo contendere pleas were inadmissible in evidence in accordance with section 90.410. Florida Rule of Civil Procedure 1.510(e) provides in pertinent part that "[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence." See Williams v. Henderson (In re Forfeiture of 1998 Ford Pickup), 779 So.2d 450, 451 (Fla. 2d DCA 2000). The appellants conclude that the summary judgment must be reversed because it was based solely on the nolo contendere pleas and evidence relating to the pleas would be inadmissible.
Section 90.410 provides as follows:
Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
In accordance with the statute, evidence concerning the entry of a plea of nolo contendere to a criminal charge is generally inadmissible in a subsequent civil action against the person entering the plea. See Chesebrough v. State, 255 So.2d 675, 676-77 (Fla.1971); Metro. Dade County v. Wilkey, 414 So.2d 269, 271 (Fla. 3d DCA 1982). The Public Defender argues that evidence of Mr. Cira's pleas of nolo contendere was admissible in evidence under the *373 circumstances of this case because Mr. Cira "opened the door" to its admission by seeking affirmative relief relative to the circumstances surrounding his pleas. In the Public Defender's view, to permit Mr. Cira to deprive the circuit court of evidence concerning his pleas by invoking the bar of section 90.410 would impermissibly transform the statute from a shield to a sword.
We need not decide whether section 90.410 makes evidence of Mr. Cira's nolo contendere pleas inadmissible in the legal malpractice action because there is other admissible evidence in the record sufficient to sustain the summary judgment. For purposes of the summary judgment, the critical issue was whether Mr. Cira had been exonerated. We have already referred to the provisions of the order granting Mr. Cira's motion for postconviction relief and the order placing him on probation. Absent any reference to the nolo contendere pleas, these documents were sufficient to establish that the criminal prosecution was not resolved in Mr. Cira's favor. Mr. Cira's complaint referenced the order for postconviction relief. The admissibility in evidence of that order is unchallenged. Different considerations apply to the admissibility of the order placing Mr. Cira on probation because it was based on the nolo contendere pleas. However, the admissibility of judgments of conviction or orders placing a defendant on probation based on a nolo contendere plea is a separate issue from the issue of the admissibility in evidence of the plea itself. Section 90.410 addresses the latter but not the former. We hold that the order placing Mr. Cira on probation was admissible in evidence for the limited purpose of showing the final disposition of the charges against him after the entry of the order for postconviction relief.[2]Cf. Olsen v. Correiro, 189 F.3d 52, 58-62 (1st Cir.1999) (holding that evidence of conviction and sentence for manslaughter based on plea of nolo contendere following order for new trial on first-degree murder charge was admissible to counter claim for incarceration-based damages by showing that plaintiff was incarcerated for something other than the murder conviction). Thus the order for postconviction relief and the order of probation were both admissible in evidence. These documents were sufficient to establish that the Public Defender was entitled to a summary judgment on the appellants' claim for legal malpractice because they could not satisfy the exoneration rule.
Affirmed.
NORTHCUTT and SALCINES, JJ., Concur.
NOTES
[1] This court's opinion on the appeal from the order summarily denying Mr. Cira's motion for postconviction relief states that he was convicted of "two counts of aggravated assault." Cira, 780 So.2d at 175 (emphasis added). This statement appears to be incorrect. Although we do not have a complete record of the underlying criminal case available to us, all of the information that we do have indicates that Mr. Cira was convicted of two counts of aggravated battery, not aggravated assault. This discrepancy is not material to our analysis.
[2] If the legal malpractice claim were to be tried before a jury, the reference to the pleas in the order of probation could be redacted.